Samuel COHEN

v.

CHECKER TAXI COMPANY.

No. 11103.

United States Court of Appeals
Seventh Circuit.

Dec. 2, 1954.

Rehearing Denied Jan. 12, 1955.

**450**

Harold A. Liebenson, Chicago, Ill., Director & Liebenson, Chicago, Ill., for plaintiff-appellant, Harry J. Director, Sheldon Deutsch, Chicago, Ill., of counsel, for appellant.

Julius Jesmer, Chicago, Ill., Chester L. Harris, Chicago, Ill., for defendant-appellee.

Before MAJOR and SWAIM, Circuit Judges, and PLATT, District Judge.

MAJOR, Circuit Judge.

Plaintiff allegedly was struck by a taxicab operated by defendant's driver at the intersection of Kedzie Avenue and Fillmore Street in Chicago, Illinois, on April 22, 1953. This action was brought to recover damages for personal injuries thereby sustained. A trial was had to a jury which returned a verdict adverse to plaintiff. From a judgment entered in accordance with such verdict, plaintiff appeals.

The primary issues, as is usual in such cases, related to defendant's negligence, plaintiff's contributory negligence and, in the event those issues were decided favorably to plaintiff, the measure of damages, if any, occasioned as a result of the accident. Defendant, in an attempt to sustain the jury verdict and the court's judgment, argues, as it did below, that plaintiff was not struck by defendant's cab as alleged, that plaintiff is an impostor and that his claim asserted against the defendant is fraudulent.

■ Obviously, the question as to whether plaintiff was struck by defendant's cab as alleged and, if so, the issues of negligence and contributory negligence, were matters for the consideration of and decision by the jury, providing there was any evidence, considered in the light most favorable to plaintiff, which would justify their submission. The trial court evidently thought there was such proof, as is evidenced by the fact that the case was submitted to the jury. A study of the record is convincing that the proof presented a typical jury case, notwithstanding certain inconsistencies, discrepancies and suspicious circumstances. Thus, the verdict of the jury is controlling, providing the case was tried and submitted without prejudicial error.

Many errors claimed to have been prejudicial are assigned, the most important of which relates to the cross-examination of plaintiff by defendant's counsel. As a prelude to a discussion of this matter and for that purpose only, a brief statement of the facts appears appropriate.

Plaintiff at the time of the alleged accident was 24 years of age and was a cripple, having been stricken with polio in early youth. About six weeks prior to the accident he had been employed by United Air Lines as a telephone reservation clerk at a salary of $45 per week. As a result of the injuries sustained, he was unable to return to his employment, which condition still existed at the time of the trial. Plaintiff's proof relative to damages included an item of $1,530 for loss of wages or compensation, presumably which he would have received in the absence of the accident, from the

United Air Lines for the period intervening between the accident and the trial ($45 per week for 34 weeks).

United Air Lines required plaintiff, as it did all prospective employees, to execute an application and also to furnish a performance bond, which requirements were met by the plaintiff. The company which furnished the bond also required an application executed by the plaintiff. The application which plaintiff filed with United Air Lines, as well as that given to the bonding company, contained a number of questions which plaintiff answered in his own handwriting, falsely, so it is claimed; in fact, the falsity of some of the answers is not disputed.

Referring to the applications thus executed by plaintiff, defendant's counsel, on cross-examination of plaintiff, asked a number of questions which plaintiff under the rulings of the court was required to answer. This cross-examination was permitted over strenuous objections by plaintiff. It is here contended that these rulings were erroneous and that this cross-examination was improper and prejudicial. With this contention we agree. The important portions of this cross-examination (conducted by Mr. Jesmer, attorney for the defendant) in question and answer form are as follows:

"Q. Now in response to this question, Mr. Cohen, 'Since your sixteenth birthday, excluding minor traffic violations, have you ever been arrested, indicted or summoned into court as a defendant in a criminal proceeding or convicted, fined or imprisoned or placed on probation, or have you ever done time for the violation of any law, regulation or ordinance?' In response to that question did you answer 'No'? A. Yes, sir.

\*   \*   \*   \*   \*   \*

"Q. In this same application for a bond, for a fidelity bond, was this question asked of you and did you answer 'No'? The question: 'Have you ever been arrested, summoned or punished in a court?' A. Yes, sir.

"Q. And were you asked this question in your application for a bond: 'Has there been any unfavorable instance in the past during which your honesty might be questioned?' And the answer was 'No'?

"Q. Did you make that answer to that question? A. Yes, sir.

\*   \*   \*   \*   \*   \*

"Q. Were you arrested in 1949 on some charges of passing bad checks? A. Yes.

"Q. And then in December of 1949 weren't you arrested in connection with some things that occurred in three hotels here in Chicago? A. Yes, sir.

"Q. Before you made this application were you ever arrested in Houston, Texas? A. Yes, sir.

"Q. On what charge? A. Nothing.

"Q. You had a gun with you at the time, didn't you? A. No, sir.

\*   \*   \*   \*   \*   \*

"Q. Now, one of those questions was this: 'Have you ever had or have you now—check yes or no—a mental upset?' And you answered 'No', is that right? A. Yes.

"Q. And then another question: 'Ulcers of the stomach or intestines?' And you answered 'No' to that one. A. Yes, sir."

As noted, this line of cross-examination was appropriately objected to by the plaintiff at the time each question was asked. On the urging of defendant's counsel that this cross-examination was proper in mitigation of damages, the court stated that the reason assigned by defendant's counsel was the basis for its rulings, on the theory that plaintiff would have been discharged by his employer if it had learned of the false answers. In the same connection, the court expressly stated that the cross-examination was not permitted for the purpose of impeachment to discredit the plaintiff or to affect his credibility.

The court's reason for permitting this cross-examination is further evidenced

by the following instruction given at the time the case was submitted to the jury:

'The court instructs the jury, that any testimony that has been admitted in evidence pertaining to the plaintiff's arrests and pertaining to his application for employment with the United Air Lines is not to be considered by the jury as evidence of impeachment affecting the credibility of the testimony of the plaintiff, but is to be considered solely for the mitigation of damages, if any, pertaining to his present and future employment."

■ No case or authority is cited by the defendant which would justify this line of cross-examination. We think it was clearly erroneous and that it cannot be excused on the basis that it was nonprejudicial. The manner and means exercised by plaintiff in obtaining his position with United Air Lines was of no concern to defendant, and it had no bearing on or relation to any issue between plaintiff and defendant in the instant case. The false answers made by plaintiff in obtaining his employment, upon discovery, created a situation to be treated and dealt with solely by United Air Lines. That the situation might result in plaintiff's discharge is purely a matter of conjecture or speculation. Furthermore, even though it be assumed that the situation might result in his discharge, there is no basis for the conclusion that he might not, after recovery from his alleged injuries, have obtained other employment equally remunerative. And it is equally a matter of conjecture and speculation as to whether the bonding company would have cancelled the bond on discovery of the false answers made by plaintiff in his application therefor.

In connection with this speculation as to the possible effect which the false answers might have had upon plaintiff's employment and earning capacity, it is important to note that plaintiff at the time of the trial had not been discharged by United Air Lines. And there was no proof that United Air Lines contemplated his discharge and no proof that the bonding company had cancelled or contemplated the cancellation of the bond which it furnished to plaintiff.

■ Defendant apparently recognizes the futility of further attempting to justify this cross-examination on the basis for which it was offered and permitted, that is, in mitigation of damages, and in this court for the first time argues that it was proper for the purpose of impeaching plaintiff's credibility. Two decisions by this court are cited in support of this contention. United States v. Waldon, 7 Cir., 114 F.2d 982, 984; United States v. Bucur, 7 Cir., 194 F.2d 297, 304. It is true this court in those cases, both of which were criminal prosecutions, approved inquiry on cross-examination as to whether the defendant had previously been convicted of a misdemeanor. No court, however, so far as we are aware, has approved such questions in the cross-examination of a plaintiff in a civil action. In any event, the rule is of no benefit to the defendant in the instant case, even though it be assumed that it is applicable in a civil action. This is so for the reason that the cross-examination under discussion was not confined to prior convictions; in fact, most of it related to prior arrests, without any indication as to whether such arrests were followed by convictions.

In Little v. United States, 8 Cir., 93 F.2d 401, 407, the defendant in a criminal case was asked on cross-examination, " 'Did you steal an automobile?' " The court, in holding that this question on cross-examination was error, stated 93 F.2d at page 408: "And when indulged in the government will not be heard to say that such cross-examination is not prejudicial error." In Echert v. United States, 8 Cir., 188 F.2d 336, 26 A.L.R.2d 752, a conviction was reversed because of the prejudicial nature of the cross-examination. In so holding the court stated 188 F.2d at page 343: "It is an established rule that 'Acts of misconduct, not resulting in conviction of a crime, are not the proper subject of cross-

examination to impeach a witness.' [Citing cases.]" To the same effect see Lee Way Motor Freight, Inc., v. True, 10 Cir., 165 F.2d 38, 41.

We think defendant's contention in this court, which appears to have been an afterthought, that the cross-examination was proper for impeaching the credibility of plaintiff, is equally as puerile as the reason advanced in the trial court, and we see no escape from the conclusion that such cross-examination was highly prejudicial. Admittedly it bore no relevancy to the issues of negligence or contributory negligence. In our view, it also was irrelevant on the issue of damages.

In view of what we have said, we find no occasion to state or discuss other errors assigned and argued on this appeal. The judgment is reversed and the cause remanded for a new trial.