**Robert E. LIPSCOMB, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17159.**

United States Court of Appeals
Eighth Circuit.

Sept. 12, 1962.

Certiorari Denied Dec. 3, 1962.
See 83 S.Ct. 298.

See also 301 F.2d 905.

R. E. Lipscomb, was on the brief, pro se.

D. Jeff Lance, U. S. Atty., and Lee J. Placio, Jr., Asst. U. S. Atty., St. Louis, Mo., was on the typewritten brief for appellee.

Before JOHNSEN, Chief Judge, and MATTHES and RIDGE, Circuit Judges.

JOHNSEN, Chief Judge.

Lipscomb pleaded guilty in 1951 to a charge of unlawfully possessing counterfeit currency and to four charges of having passed counterfeit currency with intent to defraud, in violation of 18 U.S.C. § 472. In view of his long and persistent career as a law violator, he was given a sentence of five years' imprisonment on each count, with the terms to be served consecutively.

The prospect of possible confinement for 25 years was naturally not pleasing to Lipscomb, and he has engaged in attempts ever since to get his conviction and sentences set aside. Every form of motion for which he has been able to discover any prototype in the books seems to have been resorted to by him. Some of these attempts he has allowed to terminate at the trial court level. Most of them, however, he has sought to make the subject of appeals before us and also of applications to the Supreme Court for certiorari. Five times his matters have been brought before us, with some of them involving only a single instrument of attack, while others have involved a series of instruments together.

In each instance we have had to hold that the situation was without basis for granting any of the relief sought. See Lipscomb v. United States, 8 Cir., 209 F.2d 831, certiorari denied 347 U.S. 962,

74 S.Ct. 711, 98 L.Ed. 1105, rehearing denied 347 U.S. 1022, 74 S.Ct. 875, 98 L.Ed. 1142; Lipscomb v. United States, 8 Cir., 226 F.2d 812, certiorari denied 350 U.S. 971, 76 S.Ct. 445, 100 L.Ed. 843, rehearing denied 350 U.S. 1003, 76 S.Ct. 550, 100 L.Ed. 866; Lipscomb v. United States, 8 Cir., 273 F.2d 860, certiorari denied 364 U.S. 836, 81 S.Ct. 72, 5 L.Ed. 2d 61, rehearing denied, 364 U.S. 888, 81 S.Ct. 173, 5 L.Ed.2d 108; U. S. ex rel. Lipscomb v. U. S. Attorney for the Eastern Dist. of Missouri, 8 Cir., Misc. No. 101, (unreported) order denying leave to file petition in mandamus, certiorari denied 365 U.S. 851, 81 S.Ct. 814, 5 L.Ed. 2d 815; Lipscomb v. United States, 8 Cir., 298 F.2d 9, certiorari denied 369 U.S. 853, 82 S.Ct. 941, 8 L.Ed.2d 12, rehearing denied 369 U.S. 891, 82 S.Ct. 1163, 8 L.Ed.2d 291.

The first attack which Lipscomb made was by a motion under 28 U.S.C.A. § 2255, alleging that he was of unsound mind at the time of his arraignment and sentencing, from an active drug addiction, and that he therefore had been mentally incompetent to make the plea of guilty which he entered. The court held a plenary hearing upon this charge, with Lipscomb being present, taking the witness stand, and also being represented by appointed counsel. The court found that on the evidence adduced Lipscomb's charge of drug influence and mental incompetency was wholly without basis, and we made affirmance of this determination, commenting in our opinion that the finding was sustained "by an overwhelming preponderance" of the evidence. 209 F.2d at p. 835.

The trial court further made a specific determination that the plea of guilty entered by Lipscomb to each of the charges against him had been voluntarily and understandingly made, and that there had been an intelligent waiver by him of indictment and of his right to be represented by counsel in the proceedings. In affirming this determination, we noted that "The record of the proceedings had at the time of his arraignment * * * showed that his constitutional right in this regard was scrupulously guarded by the trial court". Id. at p. 834.

The various other attacks in which Lipscomb has engaged have been listed above; some of them are discussed in our opinion in 298 F.2d 9; and there is no occasion to go into their details, except as a specific reference is hereafter made to one of them.

After having resorted to every form of motion attack of which he was able to conceive through a 10-year period, Lipscomb then came forth with a motion in the trial court for recognition of a right to prosecute belatedly and in forma pauperis an appeal from his conviction and sentences. The trial court held that, on the record of the proceedings and the determinations which had thereafter been made against him, the motion was legally frivolous on its face; made denial of it; and further refused leave to prosecute an appeal in forma pauperis from such order, on the ground that the appeal could have no basis of good faith. Lipscomb now seeks leave from us to have his alleged right to a belated appeal recognized and to be permitted to prosecute it in forma pauperis.

His motion in the trial court for recognition of such a right of belated appeal predicated existence of jurisdiction on the ground that he had within three days after his conviction prepared and sought to have transmitted to the trial judge a letter giving notice of his desire and making request for leave to appeal, but that the officials of the St. Louis city jail, where he was held awaiting transportation to the federal penitentiary, had refused to allow the letter to be mailed. The Government was not, of course, after ten years, in a position to disprove Lipscomb's assertions as to his mailing attempt or the nature thereof. Its investigation was unable to develop anything either to substantiate or to refute Lipscomb's claim in this respect.

On this situation, we shall for purposes of our consideration assume the facts regarding the mailing attempt to be as Lipscomb has alleged them. But, al-

though the matter is thus being treated as one in which timely notice of appeal was constructively filed in the trial court in 1951, this fact does not command that Lipscomb should be permitted to prosecute that dormant appeal in 1962.

Regardless of whether it might be sought to prosecute such an appeal as a paid one or in forma pauperis, we would not ordinarily allow a defendant, after the lapse of such a period, to pick up the threads of an appeal, which had been timely taken by the filing of notice of appeal, but which had not thereafter been attempted to be pursued. Failure to prosecute for such an unreasonable length of time would generally entitle it to be held that an abandonment existed.

Even, however, if the situation were one of such extraordinariness in circumstance as to be without basis for implication of intention to abandon, we would not feel impelled to exercise our discretion to allow a default of that extent under the Rules of Criminal Procedure and our own Rules to be bridged, unless we deemed it probable that a gross legal wrong was present. The mere fact that questions were sought to be raised which might otherwise be nonfrivolous would not require that a defendant be accorded the privilege of so tardily prosecuting an appeal. A public interest is involved in not affording defendants the opportunity to keep criminal appeals thus dangling, or to endeavor to capitalize on such a judicially inadvertent situation which may have come to exist.

Here, Lipscomb's application to be permitted to pick up his appeal and prosecute it after ten years would be entitled to be denied upon the foregoing grounds. The record of the proceedings and the elements thereof are without basis for any contention that an injustice or gross legal wrong is involved in Lipscomb's conviction and sentencing. Further, the situation would properly be subject to a holding that Lipscomb had abandoned such appeal as he originally sought to take. Of this, the other attacking activities in which he chose to engage for a period of ten years are ample probative indication. As we said of a comparable situation in Rader v. United States, 8 Cir., 300 F.2d 756, "the appeal was obviously abandoned by his failure to make any attempt to prosecute it and by his subsequent acts and conduct, extending over a number of years, which were entirely inconsistent with his present claim that he had appealed from the judgment entered against him". The manifest lack of any curb on Lipscomb's attacking activities through a ten-year period is ample demonstration that he was not without opportunity to have attempted to prosecute his alleged appeal had he chosen to do so.

But if scrutiny were to be engaged in beyond such point, it would then be required to be held that the claims or issues which Lipscomb wishes to present by an appeal are matters which have acquired a legal finality or are now left with no appellate substance in view of the determinations which have been made in the other proceedings which he has brought. These affecting realities necessarily make the question of frivolousness as to his appeal one of narrower aspect than in a conventional situation of attempt to prosecute an appeal as a primary instrument of attack.

As above indicated, the voluntariness of Lipscomb's plea of guilty and his competency to make it were the subject of hearing and adjudication in the proceedings involved in 209 F.2d 831. The legal significance of this adjudication was pointed out to him in our opinion in 273 F.2d at p. 865, where we said: "It has been judicially determined that he pleaded guilty intelligently to each of the counts of the Information. Having done so, his plea of guilty to all the counts of the Information was an admission of his guilt, a waiver of all non-jurisdictional defects and defenses and an admission of all the facts averred in the Information."

Our opinion in 273 F.2d 860 also judicially put to rest Lipscomb's contention that the trial court had, in the sentences

imposed, unfairly taken into account and improperly been controlled by his previous criminal career and history.

While Lipscomb might initially have had the circumstances related to the entering of his plea and the imposing of sentence upon him, as reflected by the record, reviewed by an appeal, he chose to have these and other elements examined and determined in collateral proceedings. Those proceedings enabled him to have the validity of his conviction and sentencing fully determined. And that determination of legal validity is as much binding on him as if it had been made on an appeal. The questions which he desires to raise in this regard have therefore become legally frivolous as present contentions for an appeal.

Again, with the questions of the voluntariness of his plea and the propriety of his sentencing being legally settled, there is left no basis for an appeal on such contentions as that he was unlawfully arrested; that illegal search and seizure were engaged in against him; that assault and third-degree tactics had compulsively been employed against him; and that he was not taken before a committing magistrate for a period of 30 hours. Most of these contentions are matters which are not within the scope of the record of the conviction and sentencing proceedings, so that they would not in any event be cognizable as appeal questions. But even if the record had contained the facts in respect to them, they would now be without any appellate significance from their submergence in the adjudication which Lipscomb sought and which has been made as to the voluntariness of his plea and the validity of his sentencing proceedings. As we said in Adkins v. United States, 8 Cir., 298 F.2d 842, 843, 844, "when a prisoner [validly] pleads guilty to an offense, he thereby waives the significance of any irregularities in his arrest and previous restraint".

Other contentions are made by Lipscomb which would be unable to provide substance for an appeal in any situation. Thus, he asserts that "the waiver of indictment, counsel and jury trial are invalid because they were not supported by an adequate and lawful consideration moving to petitioner". Again, he contends that, notwithstanding his plea of guilty, the Government was required to produce evidence of his guilt. Further, he seeks to argue that reversible error existed in the trial court's failure to inform him of his right to an appeal, although he admits that he became aware of such right through "jailhouse lawyers" within an hour after his sentencing, and although he is claiming here that he duly availed himself of this information and legally took an appeal by attempting within three days to mail notice of appeal to the trial judge. Under Rule 52(a) of the Rules of Criminal Procedure, 18 U.S.C.A., of course, "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded". Additional contentions of equal legal frivolousness are made, but no purpose can be served by engaging in further enumeration.

On the adjudication existing as to the validity of Lipscomb's plea, conviction and sentencing, his desire now to appeal from such conviction and sentence is as a matter of law without any colorable basis of substance. Moreover, as indicated above, the attacking activities in which he has engaged for a period of ten years are so inconsistent with any intention to rely on or pursue an appeal as to entitle it to be held that he had abandoned the appeal which he claims he took. Finally, there is no such legal wrong or injustice involved in his situation as would have moved us in any event to exercise our discretion to allow him to bridge the ten-year default which he has permitted to occur without any attempt to prosecute his appeal. On these realities, no purpose would be capable of being served by appointing counsel for him as to his foreclosed appeal or in leaving the situation in any manner longer open.

To clear the records of the trial court and our own of any further pendency of Lipscomb's appeal, it will be permitted to be docketed without payment of fee

and it will then be dismissed (a) for lack of diligence in prosecution, (b) for abandonment, and (c) for frivolousness.

Appeal dismissed.