**STATE of Minnesota, Respondent,**

v.

**Travis Clayton JOHNSON, Appellant.**

No. A04–838.

Court of Appeals of Minnesota.

July 5, 2005.

---

Steven M. Light, Fargo, ND, for appellant.

Considered and decided by LANSING, Presiding Judge; STONEBURNER, Judge; and MINGE, Judge.

## OPINION

LANSING, Judge.

In this appeal from convictions of first-degree burglary and fifth-degree assault, Travis Johnson challenges the district court's jury instructions and its determination that a defendant may be cross-examined about his probationary status and the conditions of his probation. Because we conclude that the district court properly instructed the jury and did not abuse its discretion by allowing the state to cross-examine Johnson about his probation, we affirm.

## FACTS

In April 2004, a jury found Travis Johnson guilty of first-degree burglary and fifth-degree assault. The evidence at trial showed that on February 3, 2004, while on probation, 29–year–old Travis Johnson went to a bar and consumed alcohol. While standing outside the bar, he saw 67–year–old Donald Johnson walking to his car and asked to talk to him about a disagreement between the two men that occurred several years earlier. Donald Johnson testified that he continued walking. Travis Johnson then walked up to him and hit him. After a bartender interrupted the altercation, Donald Johnson drove home.

When he pulled into his garage, Donald Johnson saw a pickup truck pull up behind him. Initially, he thought that his friend Larry Stortroen had followed him home. After he got out of the car, however, he saw Travis Johnson standing in the garage. The men started arguing and an

Mike Hatch, Attorney General, St. Paul, MN; and Gregory A. Widseth, Polk County Attorney, Crookston, MN, for respondent.

altercation ensued. Donald Johnson testified that Travis Johnson pushed him to the ground, climbed on top of him, and started punching him.

On direct examination, Travis Johnson testified that he had been at the same bar as Donald Johnson and had an argument with him outside the bar but did not punch him at that time. He then followed Donald Johnson home, entered his garage, and asked for an apology. Donald Johnson grabbed him by the throat and hit him. After about forty-five seconds, Travis Johnson hit Donald Johnson to force him to release his throat hold. When Larry Stortroen arrived, Donald Johnson let go of Travis Johnson and Travis Johnson left.

On cross-examination, the prosecutor questioned Travis Johnson about his probationary status and the conditions of his probation. Travis Johnson admitted that he was on probation and that, as a condition of probation, he was required to be law-abiding and to refrain from drinking alcohol and going to bars. He also stated that he did not know if he had "time hanging over [his] head" if he violated the conditions of his probation. The court immediately cautioned the jury that evidence of Travis Johnson's probation had been offered for the limited purpose of assisting them in determining whether he had committed the crimes with which he was charged and that he was not on trial for, and could not be convicted of, any offense other than the offense charged in the complaint. The court specifically instructed the jury that it could not convict Travis Johnson on the basis of his probation violation.

The jury found Travis Johnson guilty as charged, and the district court sentenced him to the presumptive sentence. This appeal from the judgment of conviction follows.

## ISSUES

I. Did the district court abuse its discretion by allowing the state to cross-examine Travis Johnson about his probationary status and the conditions of his probation?

II. Did the district court commit reversible error in instructing the jury on first-degree burglary?

III. Did the district court abuse its discretion by refusing to instruct the jury on the lesser-included offense of fourth-degree burglary?

## ANALYSIS

### I

■ Travis Johnson argues that the district court abused its discretion by allowing the state to cross-examine him about his probationary status and the conditions of his probation to reveal a possible motive to lie. Johnson claims that because he admitted on direct examination that he had been drinking at a bar, the state did not have a legitimate reason on cross-examination to inquire into his probationary status.

■ Rulings on evidentiary matters rest within the district court's sound discretion. *State v. Moua,* 678 N.W.2d 29, 37 (Minn. 2004). This court will not reverse an evidentiary ruling absent evidence that the district court abused its discretion and that the evidentiary ruling substantially influenced the jury's decision. *Id.*

Whether a defendant who has not raised his probationary status on direct examination may be questioned about it on cross-examination has not been previously addressed by Minnesota appellate courts. *Cf. State v. Palmer,* 206 Minn. 185, 191–92, 288 N.W. 160, 164 (1939) (holding that district court did not err in allowing state to cross-examine defendant about failure to comply with conditions of probation af-

ter defendant testified on direct examination that he had complied). But the Supreme Court has held that a witness may be cross-examined about his probationary status to establish that the witness had an incentive to cooperate and curry favor with the state as a result of his status. *Davis v. Alaska,* 415 U.S. 308, 319, 94 S.Ct. 1105, 1111–12, 39 L.Ed.2d 347 (1974) (allowing state to cross-examine juvenile witness about probationary status despite juvenile's interest in privacy of his delinquency record). Other courts have held that when defendants take the witness stand in their own behalf, they take on the role of a witness and become subject to cross-examination to the same extent as any other witness. *See, e.g., Simon v. United States,* 123 F.2d 80, 85 (4th Cir.1941); *United States v. Waldon,* 114 F.2d 982, 984 (7th Cir.1940).

Travis Johnson took on the role of a witness after he took the stand and, like the defendant in *Davis,* he became subject to cross-examination to the same extent as any other witness. Accordingly, the district court did not abuse its discretion by allowing the state to cross-examine Travis Johnson about his probationary status to show that he had a motive to lie. *See* Minn. R. Evid. 616 (stating that evidence of bias, prejudice, or interest for or against any party is admissible to test the credibility of a witness).

■ Travis Johnson claims that his admissions on direct examination made it unnecessary for the state to cross-examine him about his probationary status. Although Travis Johnson testified that he had been drinking at a bar, he did not mention that he was on probation or that he was required to remain law-abiding as a condition of probation. Subject to the limitations imposed by the rules of evidence, the state was entitled to elicit that evidence to make a record from which the jury could infer that Travis Johnson had a motive to lie about his failure to remain law-abiding—namely, to avoid a substantial jail sentence for violating the conditions of his probation. Because the prosecutor did not exceed the limitations of the rules of evidence, the district court properly allowed the state to cross-examine Travis Johnson about the conditions of his probation. *See* Minn. R. Evid. 401 (defining "relevant evidence" as evidence tending to make existence of fact, such as bias, more probable or less probable than it would be without the evidence); Minn. R. Evid. 403 (allowing exclusion of relevant evidence when probative value is substantially outweighed by danger of unfair prejudice); Minn. R. Evid. 608(b) (allowing inquiry into specific instances of misconduct for impeachment purposes if conduct probative of truthfulness or untruthfulness); Minn. R. Evid. 609 (limiting use of prior convictions for impeachment purposes).

**II**

■ Travis Johnson next argues that the district court's burglary instruction constituted plain error because it misstated the law. We disagree.

■ The district court is allowed considerable latitude when selecting language for jury instructions. *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn.1986). The law requires only that "the charge as a whole convey to the jury a clear and correct understanding of the law of the case." *Barnes v. Northwest Airlines, Inc.,* 233 Minn. 410, 421, 47 N.W.2d 180, 187 (1951). This court reviews jury instructions in their entirety to determine if they fairly and accurately reflect the law of the case. *State v. Peou,* 579 N.W.2d 471, 475 (Minn. 1998); *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988).

■ Travis Johnson concedes that he did not object to the district court's burglary instruction at trial. His conviction will therefore be reversed only if the instruction constitutes plain error. *State v. Ihle,* 640 N.W.2d 910, 916 (Minn.2002). To establish plain error, Travis Johnson must prove that there was error, the error was plain, and the error affected substantial rights. *State v. Vick,* 632 N.W.2d 676, 685 (Minn.2001). An instruction is erroneous if it materially misstates the law. *Ihle,* 640 N.W.2d at 917. An error is plain if it is "clearly contrary to the law at the time of appeal." *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 1548, 137 L.Ed.2d 718 (1997).

The statute under which Travis Johnson was charged provides in relevant part: "Whoever enters a building without consent ... and commits a crime while in the building ... commits burglary in the first degree ... if ... the burglar assaults a person within the building or on the building's appurtenant property." Minn.Stat. § 609.582, subd. 1(c) (2002).

The district court instructed the jury that

> The statutes of Minnesota provide that whoever enters a building without the consent of the person in lawful possession, and assaults another person within the building or on the building's appurtenant property, is guilty of a crime.
>
> The elements of burglary in the first degree are[:][F]irst, defendant entered a building without the consent of the person in lawful possession....
>
> Second, defendant assaulted a person within the building or on the building's appurtenant property.
>
> Third, defendant's act took place on February 3, 2004, in Polk County, Minnesota.

Travis Johnson argues that the district court failed to instruct the jury, consistent with the relevant statute and 10A *Minnesota Practice,* CRIMJIG 17.04 (1999), that it was required to find *either* that he entered Donald Johnson's garage with the intent to commit a crime (a theory the prosecution did not assert) *or* that he committed a crime while in the building (the instruction the court gave). According to Travis Johnson, by instructing the jury on only one of the two options set forth in CRIMJIG 17.04, the district court "gave the jury the impression that it could convict [him] without finding that he either committed a crime while inside [Donald Johnson's] garage or intended to commit a crime at the time of entry."

Contrary to Travis Johnson's argument, however, the district court's instruction is consistent with CRIMJIG 17.04 and does not reasonably convey an impression that the jury could find Travis Johnson guilty of first-degree burglary without finding that he committed a crime in Donald Johnson's garage. CRIMJIG 17.04 does not suggest that the jury must be instructed that it has the option of finding either that the defendant entered or remained in the building with the intent to commit a specific crime or that he committed a specific crime within the building, particularly when one of the options (in this case the first) is inconsistent with the state's theory of the case and unsupported by the evidence. Indeed, such an instruction might have confused jurors and caused them to think that they were required to find intent at the time of entry. Additionally, the court's instruction clearly stated that to find Travis Johnson guilty of first-degree burglary, the jury had to find beyond a reasonable doubt that the defendant assaulted a person within the building or on the building's appurtenant property. The court's instruction could not, therefore, have misled the jury into thinking that it

could find Travis Johnson guilty of first-degree burglary without finding that he committed a crime while inside the garage.

Travis Johnson argues that, based on his testimony that he hit the victim in self-defense, the jury could have found, with the correct instruction, that he committed an assault but not a crime. But it is unclear how the instruction Travis Johnson proposes could have resulted in a finding that he committed assault but not a crime, other than by misleading the jury.

Finally, Travis Johnson argues that the court failed to give the jury the CRIMJIG or statutory definition of the crime intended or actually committed. But the record shows that the district court defined the crime actually committed in its instruction on fifth-degree assault.

Because the district court's instruction accurately stated the law, the district court did not commit reversible error in instructing the jury.

### III

■ Travis Johnson next argues that the district court abused its discretion by refusing to instruct the jury on the lesser-included offense of fourth-degree burglary. We do not agree.

■ The decision to instruct the jury on a lesser-included offense is within the district court's discretion. *State v. Auchampach*, 540 N.W.2d 808, 815 (Minn. 1995). An instruction on a lesser-included offense is appropriate when (1) the lesser offense is necessarily an included offense, and (2) the evidence reasonably supports a conviction of the lesser offense but not a conviction of the greater offense. *State v. Richardson*, 670 N.W.2d 267, 283 (Minn. 2003); *State v. Leinweber*, 303 Minn. 414, 421, 228 N.W.2d 120, 125 (1975). Stated differently, "the proof of the elements [that] differentiate the two crimes must be

sufficiently in dispute so that a jury may consistently find the defendant innocent of the greater offense and guilty of the lesser offense." *State v. Adams*, 295 N.W.2d 527, 532 (Minn.1980). The state does not dispute that fourth-degree burglary is a lesser-included offense of first-degree burglary; the only issue, therefore, is whether the evidence reasonably supports a conviction of fourth-degree burglary and at the same time does not support a conviction of first-degree burglary.

A person who enters a building without consent and assaults another person within the building commits first-degree burglary. Minn.Stat. § 609.582, subd. 1(c). By contrast, a person who enters a building without consent and commits a misdemeanor other than theft is guilty of fourth-degree burglary. Minn.Stat. § 609.582, subd. 4 (2002). The district court declined to instruct on fourth-degree burglary, reasoning that no rational basis existed to convict Travis Johnson of fourth-degree burglary because his prior offenses enhanced the assault from a misdemeanor to a felony. Travis Johnson argues that a fourth-degree-burglary instruction was appropriate because, based on his testimony that he hit Donald Johnson to get him to release the hold on his throat, the jury could have found that he acted in self-defense and therefore lacked the intent to inflict bodily harm required for an assault conviction. Accordingly, Johnson argues, the jury could have found that he committed disorderly conduct (a misdemeanor) rather than assault.

But Travis Johnson did not raise the issue of self-defense at trial or provide notice prior to trial of his intent to claim self-defense. *See* Minn. R.Crim. P. 9.02, subd. 1(3)(a) (requiring defense to give notice of defenses, including self-defense, before omnibus hearing); *State v. Gustafson*, 610 N.W.2d 314, 320 (Minn.2000)

(stating that self-defense is affirmative defense and defendant must give notice of intent to rely on self-defense). Johnson also did not request a self-defense instruction at trial. Thus, there is no basis for his claim that the jury could have found he acted in self-defense and therefore lacked the requisite intent to commit the assault on which the first-degree burglary charge was predicated.

Additionally, Travis Johnson has not demonstrated that, even if he had properly asserted self-defense, the evidence could reasonably support a conviction of disorderly conduct but not of assault. Disorderly conduct is defined by Minn.Stat. § 609.72, subd. 1(1) (2002), as brawling or fighting with knowledge that the conduct would tend to alarm, anger, or disturb others, or to provoke an assault or breach of the peace. This court has held that self-defense applies to a charge of disorderly conduct when the behavior that forms the basis of the offense presents the threat of bodily harm. *State v. Soukup*, 656 N.W.2d 424, 429 (Minn.App.2003), *review denied* (Minn. Apr. 29, 2003). Travis Johnson admitted fighting with Donald Johnson. Therefore, even assuming Johnson had raised the defense, self-defense would apply equally to the greater and the lesser-included offense. As such, we conclude that the evidence would not have supported a conviction of fourth-degree burglary and, at the same time, an acquittal of first-degree burglary.

Travis Johnson failed to raise the self-defense issue and may not now claim on appeal that the jury could have found that he acted in self-defense for purposes of the assault but not for the disorderly conduct. The district court did not therefore abuse its discretion by refusing to instruct the jury on fourth-degree burglary.

## DECISION

The district court properly instructed the jury and did not abuse its discretion by allowing the state to cross-examine Johnson about his probationary status and the conditions of his probation.

**Affirmed.**